## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SYNTEL, INC., a Michigan
corporation

      Plaintiff,

v.

SYNTEL, LLC, an Arkansas
limited liability company,

      Defendant.

Case No. 2:15-cv-10652

Hon. Nancy G. Edmunds

Mag. David R. Grand

**PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION**

---

Alan N. Harris (P56324)
Susan M. Kornfield (P41071)
Bodman PLC
201 South Division, Suite 400
Ann Arbor, Michigan 48104
(734) 761-3780
aharris@bodmanlaw.com
skornfield@bodmanlaw.com
Attorneys for Plaintiff

---

### <u>PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>

Plaintiff Syntel, Inc. ("Syntel"), by its attorneys, Bodman PLC, under the

Lanham Act, 15 U.S.C. § 1051, *et seq.*, moves for a preliminary injunction against

Defendant SynTel, LLC pursuant to Rule 65(a) of the Federal Rules of Civil

Procedure.  In support of this motion, Syntel relies on the accompanying brief and exhibits.

WHEREFORE, for the reasons stated in the accompanying brief, Syntel respectfully requests that this Honorable Court grant this motion and issue a preliminary injunction against Defendant SynTel, LLC.

Respectfully submitted,

/s/Alan N. Harris
Alan N. Harris (P56324)
Susan M. Kornfield (P41071)
Bodman PLC
201 South Division Street, Suite 400
Ann Arbor, Michigan  48104
(734) 761-3780
(734) 930-2494 - Fax
aharris@bodmanlaw.com
skornfield@bodmanlaw.com

February 20, 2015                    *Attorneys for Plaintiff Syntel, Inc.*

2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SYNTEL, INC., a Michigan
corporation

       Plaintiff,

v.

SYNTEL, LLC, an Arkansas
limited liability company,

       Defendant.

Case No. 2:15-cv-10652

Hon. Nancy G. Edmunds

Mag. David R. Grand

**BRIEF IN SUPPORT OF
PLAINTIFF'S
MOTION FOR A PRELIMINARY
INJUNCTION**

---

Alan N. Harris (P56324)
Susan M. Kornfield (P41071)
Bodman PLC
201 South Division, Suite 400
Ann Arbor, Michigan 48104
(734) 761-3780
aharris@bodmanlaw.com
skornfield@bodmanlaw.com
Attorneys for Plaintiff

---

# BRIEF IN SUPPORT OF PLAINTIFF'S
# MOTION FOR A PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

INTRODUCTION...................................................................................................1

STATEMENT OF FACTS ....................................................................................2

A.  Plaintiff and Its Services. .............................................................................2

B.  Trade Channels and Use of the Mark..........................................................7

C.  Industry Recognition....................................................................................8

D.  Defendant. ....................................................................................................9

ARGUMENT .......................................................................................................11

A.  Legal Standard. ..........................................................................................11

B.  Likelihood of Success. ...............................................................................11

    1.  *Syntel's Mark is Strong* ......................................................................12

    2.  *The Parties' Services Overlap.* ...........................................................13

    3.  *The Marks are Identical* .....................................................................14

    4.  *The Marketing Channels Overlap.*......................................................15

    5.  *Defendant Knew of Syntel.* .................................................................15

C.  Syntel Will be Irreparably Harmed by Defendant's Continued Use of Defendant's Mark......................................................................................17

D.  An Injunction Will Not Cause Harm To Others. .......................................18

E.  An Injunction Will Serve the Public Interest.............................................18

CONCLUSION ....................................................................................................19

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir. 1980), *cert. denied*, 449 U.S. 899, 101 S. Ctr. 268, 66 L.Ed.2d 129 (1980) ..........................15

*Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n.*, 110 F.3d 318, 322 (6th Cir. 1997) ................................................................................11

*Champions Golf Club, Inc. v. Champions Golf Club*, 78 F. 3d 1111, 1119 (6th Cir. 1996) ..........................................................................................................14

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997) ................................................................................... 12, 15

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), *cert denied*, 459 U.S. 916, 103 S. Ct. 231, 74 L.Ed.2d 182 (1982)...............................................................................................................15

*Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F. 2d 1261 (6th Cir. 1985).............12

*Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991) ..................................................................... 12, 16

*Ignition Athletic Performance Group, LLC v. Hantz Soccer U.S.A., LLC,* No. 06-2308, 245 Fed.Appx. 456, 460 (6th Cir. 2007) ...................................................17

*Innovation Ventures, LLC v. Body Dynamics, Inc.*, No. 08-12711, 2009 WL 877640 (E.D. Mich. March 30, 2009) ................................................................17

*Kellogg Co. v. Exxon Corp.,* 209 F.3d 562, 568-575 (6th Cir. 2000) .....................14

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377 (6th Cir. 2006) .................................................................................................. 17, 19

*Midwest Guaranty Bank v. Guaranty Bank*, 270 F. Supp. 2d 900 (E.D. Mich. 2003) 14, 18, 19

*Pita Delight, Inc. v. Salami,* 24 F. Supp. 2d 795, 802 (ED Mich. 1998 .................16

*R.L. Polk & Co. v. InfoUSA, Inc.*, 230 F. Supp. 2d 780 (E.D. Mich. 2002).... 11, 13, 14, 18

*Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 632-633 (6th Cir. 2002) ...13

**Statutes**

15 U.S.C. § 1065 ........................................................................................13

15 U.S.C. § 1114 and § 1125 ....................................................................11

15 U.S.C. § 1115(a) ..................................................................................13

15 USC §1072 ...........................................................................................16

# **INTRODUCTION**

Plaintiff Syntel, Inc. ("Syntel") provides software development and information technology services in connection with the mark, SYNTEL (the "Mark"). Syntel has used the Mark for 30 years and its federal trademark registrations are incontestable. Despite actual knowledge of Syntel's trademark rights, Defendant SynTel, LLC ("Defendant") has recently commenced use of the identical mark to identify Defendant's software development services ("Defendant's Mark"), and has refused to cease use of Defendant's Mark despite requests from Syntel.

Syntel is well known and has a reputation for providing technology services of the highest quality. It has won numerous awards and recognition for the expertise of its people, its ability to help clients solve business problems, and the quality of its technology services. The Mark symbolizes this goodwill and represents years of Syntel's investment in its brand.

Syntel has corporate and institutional clients in a diverse range of industries, including telecommunications, banking and financial services, healthcare, insurance, logistics, manufacturing, retail, and travel. The reach of its Mark is extensive, both geographically and by business sector. Use by Defendant of Defendant's Mark is likely to cause confusion, to cause mistake, or to deceive the relevant purchaser and the public as to the affiliation, association, or connection

between the parties because: the marks of Syntel and Defendant are identical; the services and trade channels are identical; the target markets are identical; and Syntel has prior use and nationwide rights.  A "likelihood of confusion" is the touchstone of trademark infringement, and such confusion will cause irreparable injury to Syntel.

Defendant's conduct is willful and intentional – its commencement of use of Defendant's Mark was with prior knowledge of Syntel's rights.  Syntel seeks an order from this Court preliminarily enjoining Defendant's intentional and infringing use of Defendant's Mark.

<u>**STATEMENT OF FACTS**</u>

A.    <u>**Plaintiff and Its Services.**</u>

Syntel is a leading global provider of business consultation services and information technology ("IT") services, which include software development, outsourcing, and process management.  Declaration of Daniel M. Moore attached as ***Exhibit 1,*** ¶ 4, 7.  Founded in 1980, and headquartered in Troy, Michigan, Syntel has grown into a worldwide company with more than 24,000 employees and with subsidiaries and offices in over a dozen countries.  *Id.* ¶ 5. Syntel is publicly traded on the NASDAQ index and had annual revenues of over $911 Million (USD) in the U.S. in 2014.  *Id.* ¶ 5.

The Mark is used in connection with a wide variety of business consultation and IT services, including software application development, application management, business analytics, cloud computing, mobility, and IT infrastructure management services. *Id.* ¶ 7. Its clients are in many business sectors, including banking and financial services, healthcare, life sciences, insurance, telecommunications, logistics, manufacturing, retail, and travel. *Id.* ¶ 6. Many of Syntel's clients are among the top 2000 public companies ranked annually in the "Forbes Global 2000" list. *Id.* ¶ 6.

The Mark is an extremely valuable and important asset of Syntel. It is used in the delivery of all of its business consultation and IT services provided in the United States and throughout the world, and appears as service marks, trade names, and business names. *Id.* ¶ 13. Syntel protects the intellectual property rights in its marks through the filing and prosecution of national and international applications for registration, including the marks below:

| **Mark** | **Services and Date of First Use** |
|---|---|
| **SYNTEL** (U.S. Reg. No. 1,692,076) | "Custom designing of computer software and computer programming services" in International Class 42<br><br>**FIRST USED IN 1984** |
| **SYNTEL** (U.S. Reg. No. 2,875,965) | "Business consultation services, namely, consultation relating to business strategy, including assessing a company's existing operations, and advising on the development of technology-related methodologies in the field of project management; consultation relating to outsourcing of computerized business |

3

| **Mark** | **Services and Date of First Use** |
|---|---|
| | functions; business consultation relating to the fields of electronic commerce and electronic business; business consultation relating to the field of on-line business transactions, namely, marketing, order processing, and order fulfillment; customer relationship management; and employee leasing services, namely, providing information technology professionals to others" in International Class 35; and <br><br> "Computer consultation services in the fields of web site design, web site development, web site maintenance, web site upgrading, web site hosting, web site privacy, web site security, database design, selection of operating environment, development of operating environment, development and integration of interactive content and design; and in the fields of computer software applications, computer software maintenance, and computer software development; technical support services via telephone, email, facsimile, pager, and in person; and enabling legacy applications for use on the world wide web" in International Class 42 <br><br> **FIRST USED IN 1999** |
| **SYNTEL** <br> (U.S. Reg. No. 2,932,357) | "Business consultation services, namely consultation relating to business strategy, namely, assessing a company's existing operations, and advising on the development of technology-related methodologies in the field of project management; consultation relating to outsourcing of computerized business functions; business consultation relating to the fields of electronic commerce and electronic business; business consultation relating to the field of on-line business transactions, namely marketing, order processing, and order fulfillment; customer relationship management; and employee leasing services, namely, providing information technology professionals to others" in International Class 35; and <br><br> "Computer consultation services in the fields of web site design, web site development, web site maintenance, web site upgrading, web site hosting, web site privacy, web site |

| <u>Mark</u> | <u>Services and Date of First Use</u> |
|---|---|
| | security, database design, selection of operating environment, development of operating environment, development and integration of interactive content and design; and in the fields of computer software applications, computer software maintenance, and computer software development; custom designing of computer software and computer programming services for others; custom computer software development, namely, enabling legacy applications for use on the world wide web; and technical support services, namely, troubleshooting of computer hardware and software problems" in International Class 42<br><br>**FIRST USED IN 1999** |
| **SYNTEL SMALL ENOUGH TO LISTEN, BIG ENOUGH TO DELIVER** (U.S. Reg. No. 3,664,282) | "Business consultation, namely, consultation relating to the outsourcing of business processes; business consultation services, namely, consultation relating to business strategy, including assessing a company's existing operations, and advising on the development of technology-related methodologies in the field of project management; consultation relating to outsourcing of computerized business functions; business consultation relating to the fields of electronic commerce and electronic business; business consultation relating to the field of on-line business transactions, namely, marketing, order processing, and order fulfillment; customer relationship management; and employee leasing services, namely, providing information technology professionals to others" in International Class 35; and<br><br>"Computer consultation services in the fields of web site design, web site development, web site maintenance, web site upgrading, web site hosting, web site privacy, web site security, database design, selection of operating environment, development of operating environment, development and integration of interactive content and design; and in the fields of computer software applications, computer software maintenance, and computer software development; technical support services, namely, computer troubleshooting via |

| Mark | Services and Date of First Use |
|---|---|
| | telephone, email, facsimile, pager, and in person," in International Class 42<br><br>**FIRST USED IN 2007** |
| **SYNTEL DigiTal one** (U.S. Reg. No. 4,666,434) | "Computer consultation services, namely, consulting in the fields of mobile applications, big data analytics, public and private cloud computing solutions, social media, evaluation, Internet Of Things (IoT), and integration of IT environments," in International Class 42<br><br>**FIRST USED IN 2014** |
| **STAYAHEAD WITH SYNTEL** (U.S. Ser. No. 86/010346) | "Providing technology consultancy services, namely, computer consultation in connection with providing a well-defined computer technology engagement roadmap to customers with IT departments that are migrating to end-to-end outsourcing software applications, where that roadmap assesses computer technology engagement maturity and connects with computer technology business needs in a phased approach with milestones and deliverables through a synergetic service model," in International Class 42<br><br>**FIRST USED IN 2014** |

*Id.* ¶ 11.

## ADDITIONAL TRADEMARKS WORLDWIDE

| Jurisdiction | Trademark | App. No. / Reg. No. | Filing Date / Reg. Date |
|---|---|---|---|
| **Canada** | **SYNTEL** | 789,746 | February 4, 2011 |
| **Canada** | **SYNTEL DigiTal one** | 1681420 | June 16, 2014 |
| **Europe (CTM)** | **SYNTEL ›Consider IT Done** | 011676921 | June 12, 2014 |
| **India** | **SYNTEL** | 1285902 | May 24, 2004 |

| Jurisdiction | Trademark | App. No. / Reg. No. | Filing Date / Reg. Date |
|---|---|---|---|
| India | SYNTEL (Design) | 1285904 | May 24, 2004 |
| Germany | SYNTEL | 30,460,119 | January 11, 2005 |
| Hong Kong | SYNTEL | 302565577 | April 2, 2013 |
| Hong Kong | SYNTEL | 302565568 | April 2, 2013 |
| Mexico | SYNTEL | 1,535,189 | October 7, 2014 |
| Singapore | SYNTEL Consider IT Done | T1006756J | May 27, 2010 |
| South Africa | SYNTEL | 2012/22110 | June 27, 2014 |
| South Africa | SYNTEL | 2012/22111 | June 27, 2014 |
| U.K. | SYNTEL | 2,353,297 | July 1, 2005 |
| U.K. | SYNTEL Consider IT Done | 2,448,237 | April 4, 2008 |
| Australia, Ireland, and Singapore (WIPO) | SYNTEL | 1001164 | April 3, 2009 |
| Philippines (WIPO) | SYNTEL | 1221625 | June 26, 2014 |

*Id.* ¶ 23.

**B.     Trade Channels and Use of the Mark.**

Syntel uses the Mark in connection with its delivery of IT services and its

promotion of such services through direct and online advertising, trade shows,

exhibits, speaking engagements, industry conferences, custom corporate events,

client meetings, and invitation-only conferences and events. *Id.* ¶ 17.  Regarded as

an expert in its industry, Syntel conducts research and prepares white papers, case

studies, and other publications on topics of interest to clients, prospective clients,

7

strategic partners, and the industry. *Id.* ¶ 17. Since 2004, Syntel has spent in excess of $10 Million (USD) in connection with promotion of its products and services identified by the Mark. *Id.* ¶ 16.

In addition to the business sectors targeted by Syntel, the general public also encounters the Mark via Syntel's website, social media (Facebook, YouTube, Twitter, LinkedIn and Google+), and mainstream publications (print and online). *Id.* ¶ 16, 22. Syntel's website, www.syntelinc.com, was launched in 1996 and has had millions of hits. In 2014, alone, there were over 76,000 unique U.S. visitors to the website. *Id.* ¶ 22a.

Since 2006, Syntel has generated revenue in excess of $4.7 Billion for services it delivered in connection with the Mark in the U.S. *Id.* ¶ 14. In 2014 alone, its revenue was over $911 Million. *Id.* ¶ 5, 14.

## C.   <u>Industry Recognition.</u>

Syntel is well known and highly regarded for its expertise, client services delivery model, and client outcomes. It has received numerous awards and extensive recognition in its field. In 2013, the *Harvard Business Review* placed Syntel among the top performing public companies. *Id.* ¶ 8. In 2012, Forbes ranked Syntel on the list of America's Best Small Companies. *Id.* ¶ 8. The company was ranked in the top 20 in several categories by the International

Association of Outsourcing Professionals "The Global Outsourcing 100" in 2011. *Id.* ¶ 8.  In 2014, these awards, rankings and recognitions included:

- Ranking #62 on the IAOP "Global Outsourcing 100" list by International Association of Outsourcing Professionals ("IAOP");

- Ranking #26 on the American Banker and BAI FinTech 100;

- Ranking #54 on the Healthcare Informatics 100;

- Ranking #40 on the Solution Provider 500 list by CRN, a division of the Channel Company; and

- Ranking #20 on the Crain's Detroit Business list of Fastest Growing Companies.

*Id.* ¶ 8.

### D.   **Defendant.**

Defendant was organized in 1999. Syntel became aware of Defendant in 2008 but noted that Defendant's business was confined to software for mailroom operations.  The trademarks used by Defendant to identify its products included "AutoMail," "USA Automail," "Mail Stream Manager," and "Takes the Work Out of Workflow."

Because Defendant's business name included the word "SynTel," Syntel wrote to Defendant, advising it of Syntel's rights in the Mark, the nature of

Syntel's business, and Syntel's commitment to defending its rights should Defendant expand its use of the name "SynTel" in a way that infringed Syntel's rights. *Id.* ¶ 25.

Defendant's goods and services remained in the field of mailroom operations until, in a 2014 press release, Defendant described itself as a software development company. *Id.* ¶ 26. According to its website, www.syntelllc.com<http://www.syntelllc.com, Defendant provides "software and services" and "outsourcing services", and targets companies in the fields of finance, utilities, healthcare, public sector, insurance, and telecommunications. *Id.* ¶ 26. Defendant's expansion of services conflicted with the trade channels, customers, and products of Syntel. In response to a written request, Defendant would not agree to cease the use of Defendant's Mark in connection with its expanded services. *Id.* ¶ 27.

Syntel has never licensed Defendant to use the Mark. *Id.* ¶ 12. Defendant has no federal registration for Defendant's Mark. Defendant is not, and has never been, affiliated with Syntel.

Defendant does business in the state of Michigan. *Id.* ¶ 28.

# ARGUMENT

## A.    Legal Standard.

In determining whether to issue a preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.  *R.L. Polk & Co. v. InfoUSA, Inc.*, 230 F. Supp. 2d 780, 783 (ED Mich. 2002), *quoting*, *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n.*, 110 F.3d 318, 322 (6th Cir. 1997).

## B.    Likelihood of Success.

Under the Lanham Act, the owner of a registered mark is entitled to an injunction against the use of a mark that is "likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. §§ 1114 and 1125.

In determining whether one mark is likely to cause confusion with another (and thus constitute trademark infringement), a court must examine various factors, not all of which will be relevant in each case:

(1) the strength of the plaintiff's mark;

(2) the relatedness of the parties' goods and/or services;

(3) the similarity of the marks;

11

(4) evidence of actual confusion;

(5) the marketing channels used;

(6) the likely degree of purchaser care;

(7) defendant's intent in selecting its mark; and

(8) the likelihood of expansion of the parties' respective product and service lines.

*See Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985).

Here, a review of these eight factors demonstrates that Syntel is entitled to a preliminary injunction against use by Defendant of Defendant's Mark.

### 1. *Syntel's Mark is Strong*

When assessing the strength of a mark, a court will place the mark into one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary, with these categories constituting a spectrum of increasing strength. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). In this case, the Mark is coined and, therefore, constitutes an arbitrary mark that is entitled to broad protection against infringement. *See Id.* at 280-281.

The inherent strength of the Mark is reinforced by the recognition it has achieved in the marketplace. *See Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). Syntel has long-time,

12

widespread use of the Mark, has billions of dollars in revenue generated through the delivery of services provided in connection with the Mark, has achieved significant recognition throughout its industry, and has extensive investment in advertising, promotion, and public use of the Mark.

Further, it is not disputed that: Syntel used the Mark first; Syntel secured federal registrations of the Mark; the certificates of registration establish the validity of the Mark, Syntel's ownership of the Mark, and Syntel's exclusive right throughout the U.S. to use the Mark in connection with the stated services pursuant to 15 U.S.C. § 1115(a); and that U.S. Registration Nos. 1,692,076, 2,875,965, and 2,932,357 are incontestable pursuant to 15 U.S.C. § 1065 and, thus, the registrations are conclusive evidence of Syntel's rights in the Mark.   An incontestable mark is entitled to the presumption that it is a strong mark.  *See, e.g., R.L. Polk & Co.*, 230 F. Supp. 2d at 785-786.

### 2. *The Parties' Services Overlap.*

The services of Syntel and Defendant are directly competitive, now that Defendant has moved from a provider of mailroom related technology products to the realm of software development and other IT services.  Syntel has been engaged in software development for over 30 years.  The likelihood of confusion is greatest where the parties' goods and services are directly competitive.  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 632-633 (6th Cir. 2002).   Defendant's

mailroom products were previously marketed and sold under trademarks owned by Defendant, and Defendant was not providing software development services to the industry sectors where Syntel was providing its technology services. However, Defendant subsequently changed the nature of its use of Defendant's Mark, thereby progressively encroaching into the realm of infringement. *See Kellogg Co. v. Exxon Corp.,* 209 F.3d 562, 568-575 (6th Cir. 2000).

### 3. *The Marks are Identical*

The marks of Syntel and Defendant are identical. While similarity alone does not compel a determination that marks are likely to be confused, it is a factor entitled to considerable weight. *Champions Golf Club, Inc. v. Champions Golf Club*, 78 F.3d 1111, 1119 (6th Cir. 1996). Where the marks are identical, there is a higher likelihood that consumers will be confused. *See, e.g. R.L. Polk & Co.*, 230 F. Supp. 2d at 789 ("the word 'Polk's' as used on the cover of Defendant's catalogue is identical to the 'Polk' mark in terms of pronunciation, verbal translation, and appearance" and therefore "Defendant's use of the word 'Polk's' is likely to cause confusion"); *Midwest Guaranty Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 915 (ED Mich. 2003) (concluding that "current and potential consumers may mistakenly believe that the parties are the same entity upon seeing the term GUARANTY, the dominant feature of both parties' marks").

### 4. *__The Marketing Channels Overlap.__*

Consideration of "the marketing channels" "requires a court to consider the similarities or differences between the predominant customers of the parties' respective goods or services," as well as "whether the marketing approaches employed by each party resemble each other." *Daddy's Junky Music Stores, Inc.,* 109 F.3d at 285. The likelihood of confusion is greatly increased if the parties' products are distributed through similar channels of trade to the same ultimate consumers. Here, the industries where Syntel has existing clients and where it targets clients overlap with those identified by Defendant on its website. At least one Michigan bank has identified Defendant as its provider of technology services.

### 5. *__Defendant Knew of Syntel.__*

Defendant's intent in adopting Defendant's Mark is a "critical factor" because where there is evidence that "'the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff], that fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), *cert denied*, 459 U.S. 916, 103 S. Ct. 231, 74 L.Ed.2d 182 (1982), quoting *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir. 1980), *cert. denied*, 449 U.S. 899, 101 S. Ct. 268, 66 L.Ed.2d 129 (1980). *See, also, Pita Delight, Inc. v. Salami,* 24 F. Supp. 2d 795, 802 (ED Mich. 1998 ("Intent is

relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user").

Syntel's registrations provided constructive notice of Syntel's rights, 15 USC §1072, and Defendant had actual notice through direct communications between the parties prior to Defendant's expansion of its use of Defendant's Mark. Defendant disregarded Syntel's rights, and willfully expanded its use of Defendant's Mark to services that overlap with the types of services offered by Syntel. Defendant's conduct also demonstrates that it will continue to expand into Syntel's established lines of business – lines of business that are protected by federal trademark registrations. "Inasmuch as a trademark owner is afforded greater protection against services that directly compete or are in the same channels of trade, a 'strong possibility' that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1112 (6th Cir.1991) .

Most, if not all of, the relevant factors support the conclusion that Defendant's use of Defendant's Mark in connection with its software development services and other IT services will likely cause confusion, cause mistake, or deceive the marketplace into believing that Defendant and its products or services

16

are connected with Syntel.  Thus, Syntel has a strong likelihood of success on the merits in its infringement action.

### C. <u>Syntel Will be Irreparably Harmed by Defendant's Continued Use of Defendant's Mark.</u>

In trademark infringement actions, the Sixth Circuit has recognized that "irreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381-382 (6th Cir. 2006) (internal quotation marks and citation omitted); *Innovation Ventures, LLC v. Body Dynamics, Inc*., No. 08-12711, 2009 WL 877640 (ED Mich. March 30, 2009) (the Sixth Circuit has continued to recognize a presumption of irreparable harm in trademark cases where infringement causes a likelihood of confusion or possible risk to reputation); *see also Ignition Athletic Performance Group, LLC v. Hantz Soccer U.S.A., LLC,* No. 06-2308, 245 Fed.Appx. 456, 460 (6th Cir. 2007) ("[i]f Plaintiff prevails on the likelihood of success on the merits factor, irreparable harm is presumed in a trademark infringement case").  Applying that general rule to this case shows that irreparable harm is established by the existing likelihood of confusion. As such, this case is similar to previous cases in the Sixth Circuit where courts have issued a preliminary injunction to prevent irreparable injury to a

trademark owners' goodwill.  *See, e.g., R.L. Polk & Co.*, 230 F. Supp. 2d at 795-796.

Unless an injunction issues, Defendant will be able to continue to operate under the identical Defendant's Mark to offer competing services.

### D. <u>An Injunction Will Not Cause Harm To Others.</u>

The issuance of an injunction will not cause substantial harm to others.  In considering this factor, this Court should ignore Defendant's self-inflicted harm created by its reckless acts of infringement.  *See Midwest Guaranty Bank*, 270 F. Supp. 2d at 924 (finding that an apparent infringer "cannot place itself in harms way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct").  By selecting a mark that is identical to Syntel's Mark, Defendant knowingly put itself at risk.  Defendant, however, elected to expand its offerings in the face of Syntel's stated concerns.  The requested injunction will not prevent Defendant from selling its products that are branded by different names, or offering services under a mark that is not likely to cause confusion with Syntel's Mark.

### E. <u>An Injunction Will Serve the Public Interest.</u>

An injunction will serve the public interest because it will prevent consumer confusion and deception in the marketplace and protect the trademark owner's property interest in its marks.  See *Lorillard Tobacco Co.,* 453 F.3d at 383.

Defendant's customers can continue to receive Defendant's mailroom related products under the names of those specific products. The public interest is also served where Syntel – the senior user of the Mark, the party that built up a national and global brand, the party that secured federal trademark registrations, the party whose registrations are incontestable and confer exclusive rights – is protected against a defendant that willfully chose to expand its technology services to Syntel's market after previously being apprised of Syntel's trademark rights. Without an injunction, Syntel's goodwill will be diminished, it will lose the ability to control the quality of the goods and services provided in connection with the Mark, the Mark will no longer exclusively identify Syntel's services, its brand will be diluted, and the marketplace will be confused. The public interest can be served only by granting an injunction. *See Midwest Guaranty Bank*, 270 F. Supp. 2d at 924.

## CONCLUSION

The Court should issue a preliminary injunction enjoining Defendant from using Defendant's Mark in connection with software development services and all other services encompassed by Syntel's federal registrations.

Respectfully submitted,

/s/Alan N. Harris
Alan N. Harris (P56324)
Susan M. Kornfield (P41071)
Bodman PLC
201 South Division Street, Suite 400
Ann Arbor, Michigan  48104
(734) 761-3780
(734) 930-2494 - Fax
aharris@bodmanlaw.com
skornfield@bodmanlaw.com

February 20, 2015                        *Attorneys for Plaintiff Syntel, Inc.*

## PROOF OF SERVICE

I hereby certify that on February 20, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Signature:    /s/ Mary Poupard
              Mary Poupard
              BODMAN PLC
              201 S. Division Street, Suite 400
              Ann Arbor, MI  48104
              (734) 761-3780
              mpoupard@bodmanlaw.com